IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Downeast Builders & Realty, Inc., | ) |
| Plaintiff, | ) C.A. No. : 3:11-cv-02653-CMC |
| v. | ) OPINION AND ORDER |
| Essex Homes Southeast, Inc., | ) ON PARTIAL MOTION TO |
| Essex Homes Southeast NC, Inc. and | ) DISMISS |
| Karl A. Haslinger, | ) |
| Defendants | ) |
| v. | ) |
| Downeast Builders & Realty, Inc., | ) |
| Frank Downey, and Catherine M. Downey, | ) |
| Counterclaim Defendants. | ) |

This matter is before the court on motion of Counterclaim Defendants Downeast Builders & Realty, Inc., Frank Downey, and Catherine M. Downey ("Counterclaim Defendants" or "Downeast") to dismiss the fifth counterclaim brought by Counterclaim Plaintiffs Essex Homes Southeast, Inc., Essex Homes Southeast NC, Inc., and Karl A. Haslinger ("Counterclaim Plaintiffs" or "Essex") for "attempted monopolization" pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. Dkt. No. 16. The court has jurisdiction under 28 U.S.C. § 1331. For the reasons stated below, Downeast's partial motion to dismiss is granted.

**STANDARD**

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain the plaintiff cannot prove any set of facts in support of its claims that entitles it to relief. *See Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Although the court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions [the plaintiff would draw] from the facts." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). The court may also disregard any "unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

The Rule 12(b)(6) standard has often been expressed as precluding dismissal unless it is certain that the plaintiff is not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Nonetheless, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (quoted in *Giarratano*, 521 F.3d at 302). *See also Wolman v. Tose*, 467 F.2d 29, 33 n.5 (4th Cir. 1972) ("Under the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present.").

Thus, in applying Rule 12(b)(6), the court also applies the relevant pleading standard. Despite the liberal pleading standard of Rule 8, a plaintiff in any civil action must include more than mere conclusory statements in support of his claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (court need only accept as true the complaint's *factual* allegations, not its legal conclusions); *see also Bass v. Dupont*, 324 F.3d 761, 765 (4th Cir. 2003) (holding that "[w]hile a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief").

## DISCUSSION

Downeast argues that Essex's counterclaim of attempted monopolization should be dismissed because it fails to state a cause of action. Specifically, Downeast argues that the fifth counterclaim "fails because (1) it alleges neither a relevant product nor geographic market; (2) it does not plausibly allege that any Downeast litigation is objectively and subjectively baseless; and (3) it has not plausibly alleged facts supporting a claim of either attempted monopolization or monopolization." Dkt. No. 34 at 2.

Essex alleges the following as to its claim of attempted monopolization in violation of federal antitrust laws:

**FIFTH COUNTERCLAIM–ATTEMPTED MONOPOLIZATION–VIOLATION OF FEDERAL ANTITRUST LAWS**

105. The Essex Counterclaim-Plaintiffs repeat and reallege the allegations contained in each of the foregoing Paragraphs, including the Affirmative Defenses hereof.

106. Attempted monopolization. The Counterclaim Defendants with affiliates and associated companies commonly owned by or acting in conspiracy under the direction of the Downey Counterclaim Defendants have engaged in predatory or anticompetitive conduct with a specific intent to monopolize, and a dangerous probability of achieving monopoly power.

107. Relevant Market. The Counterclaim Defendants have engaged in a pattern of conduct in an attempt to monopolize the market for an identified subclass or submarket of new houses within a particularized price point and within the geographical market area served by Essex.

108. Predatory and Anti-Competitive Conduct. The Counterclaim Defendants have knowingly attempted to monopolize by bringing objectively baseless copyright claims and threats of false claims against Essex and other competitors in said defined relevant submarket, and upon information and belief by threatening and intimidating Essex and other such competitors in a pattern of sham litigation and threats of litigation. For example, and in addition to the present predatory lawsuit filed against the Essex *et al.* the Counterclaim Defendants together with their affiliates, associated

companies and agents have filed similarly baseless lawsuits and have threatened yet others with the monopolistic threat of suit for supposed copyright infringement.

109. The willful misconduct. The Counterclaim Defendants are aware that the alleged copyright registrations are invalid and not infringed.

110. The anti-trust violations. The Counterclaim Defendants' lawsuit hereof is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. Moreover, the Counterclaim Defendants have brought this baseless suit with the subjective motivation to interfere directly with the business relationships of a competitor. Specifically, the Counterclaim-Defendants' objectively baseless copyright claims in this lawsuit and the threats to sue other persons who have purchased Essex houses and to offer up such houses for destruction constitute attempted monopolization in violation of Section 2 of the Sherman Act.

111. Attempted monopolization. The Counterclaim-Defendants have economic market power in the relevant market. The sham litigation and threats of litigation of the Counterclaim-Defendants in an unlawful attempt to extend their market power through over-extending the purported reach, if any, of the alleged copyright registrations is in violation of Section 2 of the Sherman Act.

112. Adverse effect on Interstate Commerce. The Counterclaim- Defendants' conduct has had an adverse effect on Interstate Commerce.

113. Antitrust Injury, Standing and Damages. The Counterclaim Defendants' attempts and threats of enforcing baseless claims through the courts are anticompetitive. The Counterclaim Plaintiffs and the marketplace have been damaged by Counterclaim Defendants' anticompetitive acts. Counterclaim Defendants' attempted monopolization has injured the Counterclaim Plaintiffs, as Counterclaim Defendants are attempting to exclude the Counterclaim Plaintiffs from the relevant submarket. And the Counterclaim Plaintiffs have been forced to incur the expense of defending Counterclaim Defendants' baseless copyright claims, and in responding to threats to sue their customers, and further to respond *in futuro* to and to refute false and misleading statements made to members of the purchasing public in reference to the present litigation. Accordingly, the Counterclaim Plaintiffs are entitled to their actual damages, trebled, to attorney's fees under 15 U.S.C. § 15, and to injunctive relief to enjoin Counterclaim Defendants' unlawful practices under 15 U.S.C. § 26.

Dkt. No. 16 at 36-38.

## I. Preliminary Inquiry: Relevant Market.

"In analyzing Sherman Act Section 2 claims . . . , courts begin with a preliminary inquiry into market definition, which serves as a tool to determine the defendant's market power. The market definition has two components the relevant product market and the relevant geographic market." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 441 (4th Cir. 2011) (internal citations omitted). Essex has alleged that the relevant market is "the market for an identified subclass or submarket of new houses within a particularized price point and within the geographical market area served by Essex." Downeast argues that Essex has failed to plead either component of the market definition. Dkt. No. 34-1 at 4.

A relevant product market includes reasonably interchangeable products that may compete with one another. *United States v. E.I. duPont de Nemours and Co.*, 351 U.S. 377, 404 (1956). A relevant geographic market encompasses the "area of effective competition" and includes the geographic area where purchasers "can practically turn to alternative supplies if the defendant were to raise its prices or restrict its output." *E.I. du Pont de Nemours*, 637 F.3d at 441. As explained by the Fourth Circuit, courts hesitate to grant motions to dismiss antitrust claims for failure to adequately plead the relevant market because it is a "'deeply fact-intensive inquiry.'" *Id.* at 443. (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 199 (2d. Cir. 2001)). The Fourth Circuit, however, has explained that some circumstances warrant dismissal for failure to plead a relevant market:

> Stated differently, "dismissals at the pre-discovery, pleading stage remain relatively rare and are generally limited to" certain types of "glaring deficiencies," such as failing to allege a relevant market." *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 232, 339 (D. Vt. 2010) (stating that dismissals are generally limited to instances in which the complaint either: (1) fails to allege a geographic market or the boundaries of a relevant geographic market; (2) defines a geographic market in an

5

unreasonably and implausibly narrow manner; or (3) alleges a contradictory and vague delineation of the relevant geographic market.").

*Id.* at 444. The Fourth Circuit has also cited to circumstances where dismissal is appropriate for failure to allege a product market in cases that involve either "'failed attempts to limit a product market to a single brand, franchise, institution, or comparable entity that competes with potential substitutes or (2) failure even to attempt a plausible explanation as to why a market should be limited in a particular way.'" *Id.* at 443 (quoting *Todd*, 275 F.3d at 199-200).

First, Essex fails to allege the relevant product market. Essex fails to allege what "identified subclass or submarket of new houses" or what "particularized price point" Downeast is attempting to monopolize. There are no allegations in Essex's other counterclaims that further specify the relevant product that is the focus of its attempted monopolization claim.

Second, Essex fails to allege the geographic market it claims Downeast is attempting to monopolize. Essex merely alleges that the market is "within the geographical market area served by Essex." In its response to Downeast's motion to dismiss, Essex refers to Downeast's complaint, which alleges that Essex has "conducted business in South Carolina and North Carolina, built houses in South Carolina and North Carolina, advertised in and into South Carolina and North Carolina, sold houses in South Carolina and North Carolina, and advertised their South Carolina and North Carolina neighborhoods where they build and sell houses." Dkt. No. 45 at 8 (quoting Dkt. No. 1 at 4, ¶ 14). Essex argues that, based on this allegation, "[t]here is no ambiguity here" as to the geographic market alleged. *Id.* However, this allegation only provides that Essex builds and sells homes in South Carolina and North Carolina, but does not allege that Essex's operations are limited to those states. Further, Essex refers to an additional allegation in Downeast's complaint which

refers to the "Southeastern United States." *Id.* Essex's counterclaim, even read in conjunction with Downeast's complaint, does nothing to clarify the geographic market, which could be interpreted as the Southeastern United States, as South Carolina and North Carolina, or as some portion of South Carolina and North Carolina.[1] The court, therefore, finds that Essex has failed to plead a relevant market.

**II. Elements of Attempted Monopolization: Dangerous Probability of Success.** Essex's failure to define the market affects another critical element that Essex must plead – a dangerous probability of achieving a monopoly.[2] The primary factor in considering whether a defendant has a dangerous probability of achieving a monopoly is the defendant's market share of the relevant market.[3] Without alleging a relevant market, Essex cannot allege Downeast's market share of that market. Essex simply alleges that Downeast "ha[s] economic market power in the relevant market." This conclusory allegation of market power fails to allege any factual support.

---

[1] Essex attempts to repair its vague and uninformative allegations by attaching to its response a printout of houses that Essex allegedly sells in Lexington, S.C. for under $400,000. Even assuming the court could consider this additional evidence on a motion to dismiss, which it cannot, this printout from the Essex website only provides evidence that Essex, not Downeast, has homes for sale in Lexington, S.C. under $400,000. This printout defines neither the relevant product nor geographic market that is the subject of its attempted monopolization claim.

[2] "An attempted monopolization offense consists of: (1) the use of anticompetitive conduct; (2) with specific intent to monopolize; and (3) a dangerous probability of success." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 441 (4th Cir. 2011).

[3] The Fourth Circuit has "previously noted that 'when monopolization has been found the defendant controlled seventy to one hundred per cent [*sic*] of the relevant market.'" *E.I. du Pont*, 637 F.3d at 450. In *E.I. du Pont*, the Fourth Circuit found that allegations that there were numerous barriers to entry into the relevant market, that the defendant had long dominated the relevant market, and that the defendant controlled 70 percent of the relevant market were sufficient to allege possession of monopoly power. Although in this case Essex must allege only "a dangerous probability of achieving a monopoly," the court finds that Essex must allege facts as to Downeast's ability of achieving a monopoly.

7

Essex's attempted monopolization counterclaim fails because Essex has not adequately pled a relevant market (both a relevant product market and geographic market) and a dangerous probability of achieving a monopoly. The court, therefore, concludes that Essex's counterclaim for attempted monopolization should be dismissed for failure to allege a claim.

## CONCLUSION

For the reasons set forth above, the court grants Downeast's motion to dismiss Essex's fifth counterclaim pursuant to Rule 12(b)(6).

**IT IS SO ORDERED.**

S/ Cameron McGowan Currie  
CAMERON MCGOWAN CURRIE  
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina  
July 3, 2012